■ In the Matter of the Claim of EDWIN S. MAYNARD, Respondent, v INDUSTRIAL WELDING CORPORATION et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workers' Compensation Board, filed December 10, 1976, as amended by decision filed August 11, 1977. Claimant suffered a compensable myocardial infarction on April 25, 1972. He returned to work in January, 1973 under doctor's orders to refrain from heavy exertion. The demands of work gradually increased through August of 1973, at which time he was called on to regularly do the same heavy lifting he had done prior to the infarction of April, 1972. Between January and August of 1973, claimant experienced occasional chest pains, both while at work and at home. The frequency of the pain incidents increased until, on August 29, 1973, claimant suffered five onsets of chest pain while at work. The board has found that claimant suffered an accidental injury on August 29 which, superimposed on pre-existing heart damage (from the April, 1972 infarction) and pre-existing blockage of the coronary arteries, caused the "coronary insufficiency" disabling claimant. The board further held that the accident of August 29 necessitated the coronary artery bypass surgery performed in September, 1974. The appellants contend that there is not substantial evidence to support the conclusion either that an accidental injury occurred on August 29 or that the post-August 29 coronary insufficiency was in any way related to claimant's work. The medical testimony unanimously indicates that claimant's fundamental problem was insufficient blood supply to the heart muscle caused by arteriosclerosis (blockage of the arteries feeding the heart muscle). The blockage of these arteries was not work related. The medical experts all also assumed, as do we, that the infarction of April, 1972 was work related in the sense that the exertions of work overtaxed claimant's deficient coronary blood supply causing an acute ischemia (lack of oxygen) which in turn caused the myocardial infarction (destruction of a portion of the heart muscle). Even though it could be reasonably said that such an infarction is the result of the pre-existing vascular disease and not the work (since a healthy worker would not have been harmed by the exertion), the rule in this State is that "if the actual work done is found to have precipitated the cardiac event which in turn causes disability or death, a sufficient factual relationship may be found between the strain of the work and the result to be deemed an accident within the scope of the Workers' Compensation Law" (Matter of McCormick v Green Bus Lines, 29 NY2d 246, 248). The question remains whether the disability following claimant's cessation of work after August 29 may reasonably be attributed to a work-related accident. The doctors testifying for the appellants said that the chest pains experienced with increasing frequency from January to August, 1973 merely reflected the deterioration of claimant's coronary arteries and not any injury or disease attributable to his work. There had been no new infarction or cardiac "event" in 1973. These doctors (one a cardiologist and the other the surgeon who performed the September, 1974 bypass) further stated the work-related infarction of 1972 did not contribute to the post-August, 1973 disability. The claimant's doctor, whose testimony provides the only support for the board's decision, agreed that no new heart damage occurred following the 1972 infarction. But, when asked if the work strain of August, 1973 caused the disability which followed, the doctor replied: "A. [Yes] in the sense that the man had heart failure. That's why we had to put him on digitalis. He had some heart muscle damage from the very beginning, and therefore, he had the beginning of heart failure. Q. And in your opinion, did the stress of his work aggravate [his previous condition]. A. Yes." We interpret this to mean

nothing more than what the appellants' experts said, that is, that the strain of work merely *exposed* a pre-existing disease. Although, as the doctor said, the exertion may have caused the chest pain, it did not cause any further damage, any further accidental injury. Thus, there is nothing to support the board's finding that claimant suffered an accidental injury on or about August 29, 1973 (see *Matter of Burris v Lewis,* 2 NY2d 323). Neither can the board's decision be supported on the theory that the post-August, 1973 disability was attributable to the work-related infarction of 1972. Although claimant may continue to suffer ill effects from the 1972 infarction, there is no rational process by which the board could conclude that the chest pains and resulting disability were due to the 1972 infarction. As all the experts agreed, the chest pain was caused by lack of blood flowing to the heart. Therefore, the disability due to the chest pains was not caused by any prior injury to the heart muscle itself. Decision reversed, with costs to the employer and its insurance carrier against the board, and matter remitted for further proceedings not inconsistent herewith. Mahoney, P. J., Main and Larkin, JJ., concur; Kane and Mikoll, JJ., dissent and vote to affirm in the following memorandum by Kane, J. Kane, J. (dissenting). While the weight of the evidence may support the conclusion of the majority, the board elected to accept the reasoning of claimant's physician that the stress of work by a man so impaired culminated in his ultimate total disability. The board further concluded that such strenuous and arduous work precipitated the condition diagnosed as coronary insufficiency and under these circumstances constituted an accidental injury *(Matter of Schuren v Wolfson,* 30 NY2d 90). Since there is substantial evidence in the record to support its conclusion, I vote to affirm the decision of the Workers' Compensation Board.